## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

DIANE S. JONES, and JOAN OGG,                )
*on behalf of themselves and all others similarly*   )
*situated*,                                   )
                                             )
               Plaintiffs,        )      Case No. 23-cv-00408-GPG-MEH
                                             )
v.                                           )      Judge Hon. Gordon P. Gallagher
                                             )
P2ES HOLDINGS, LLC,                          )
                                             )
               Defendant          )
                                             )
                                             )

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Plaintiffs Diane S. Jones and Joan Ogg ("Plaintiffs") submit this Motion and Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant P2ES Holdings, LLC ("Defendant") has represented that it does not oppose this motion.

## I.     INTRODUCTION

This litigation arises from the alleged access to personal identifying information ("PII") as a result of a November 2021 data incident experienced by Defendant (the "Data Incident"). Plaintiffs and Class Members include current and former customers of Defendant's clients and customers, and their dependents, and other individuals affiliated with Defendant whose PII was potentially accessed in the Data Incident.

After extensive arm's length negotiations and with the assistance of a well-regarded independent third-party mediator, the parties have reached a settlement that is fair, adequate, and reasonable. The agreement creates a $1,250,000 non-reversionary Settlement Fund where Class Members can easily submit a claim for a $50 pro rata cash payment, reimbursement of out-of-pocket expense award of up to $5000, lost time claims up to 4 hours at $25 per hour, and verified fraud claims of $250 per incident, capped at $5000. Plaintiffs strongly believe the settlement is favorable to the Settlement Class.

Pursuant to Rule 23(e), Plaintiffs move the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Accordingly, and relying on the following memorandum of points and authorities, the Joint Declaration of Plaintiffs' Counsel (attached hereto as Exhibit 2) and attached exhibits filed herewith, Plaintiffs respectfully request the Court preliminarily approve the Parties' Settlement Agreement and issue the proposed order attached to Settlement Agreement (Exhibit 1 to this motion) as Exhibit D.

II.     **CASE SUMMARY**

A.     **The Data Incident**

This is a nationwide class action brought by Plaintiffs on behalf of themselves, and a class of "all individuals whose PII was compromised in the (Data Incident), first announced by Defendant on or about December 19, 2022." (*See generally* Plaintiffs' Consolidated Class Action Complaint ("CAC"), ECF No. 28, ¶ 129.) In their CAC, Plaintiffs alleged individually and purportedly on behalf of a putative class that, as a direct result of the Data Incident, Plaintiffs and Class Members potentially suffered numerous injuries and would likely suffer additional harm in the future. Plaintiffs' claims for alleged damages and remedies included the following categories of harms: (i) the current and imminent risk of fraud and identity theft;  (ii) the lost or diminished value of the PII; (iii) the out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) the lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time; (v) the continued and certainly increased risk to their PII, which remains unencrypted and available for unauthorized third parties to access and abuse and may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII; (vi) the invasion of privacy; (vii) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and the Class Members' PII; and (viii) the emotional distress, fear, anxiety, nuisance, and annoyance related to the theft and compromise of their PII.

Plaintiffs, individually and on behalf of other members of the Class, asserted claims for (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) breach of third-party beneficiary contract; (v) breach of confidence; (vi) unjust enrichment; and, (vii) violations of the

Colorado Consumer Privacy Act, Colo. Rev. Stat. § 6-1-105(1)(1) *et seq*. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law. Defendant denies all claims, allegations of wrongdoing, and denies all liability.

    **B.    Procedural Posture**

On February 12, 2023, Plaintiff Diane S. Jones filed the first complaint against Defendant in this Court for claims arising from the Data Incident. On February 20, 2023, Plaintiff Joan Ogg filed a second related Complaint in this Court. On May 8, 2023, the Court entered an order consolidating the two related actions. On August 10, 2023, the Plaintiffs filed their CAC.  In their CAC, Plaintiffs alleged individually and purportedly on behalf of a putative class that, as a direct result of the Data Incident, Plaintiffs and Class Members potentially suffered numerous injuries and would likely suffer additional harm in the future.

Soon after, the Parties began discussing the prospect for early resolution, agreed to a private mediation, and ultimately asked the Court to defer the deadlines until after mediation, a request that the Court granted. ECF No. 26.  Plaintiffs then sent informal discovery requests. In response to Plaintiffs' informal discovery requests for settlement purposes, Defendant produced informal discovery that addressed the manner and mechanism of the Data Incident, the number of impacted individuals broken down by state, and Defendant's notice program and incident response.   Prior to mediation, the Parties submitted lengthy briefs and exchanged information necessary to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. *Id.*

 On June 19, 2023, the parties engaged in a mediation session with Mr. Bruce A. Friedman, Esq. at JAMS. Mr. Friedman is a well-regarded mediator with substantial experience handling data breach class action mediations. Although a resolution was not reached, the parties continued to engage in direct settlement negotiations and were able to reach a resolution. The agreed resolution

or settlement is memorialized in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1. The Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendant and the Released Parties relating to the Data Incident and this Litigation, by and on behalf of Plaintiffs and Class Members.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Benefits

The settlement negotiated on behalf of the Class provides for a $1,250,000 non-reversionary Settlement Fund and a claims process through which Class Members can easily submit for substantial settlement benefits. The settlement provides for relief for the approximately 179,659 members of the Settlement Class defined as follows:

**All natural persons who were impacted in the November 2021 Data Incident.**

The Class specifically excludes: (i)  Defendant and its officers and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.  S.A. ¶ 1.4.

The benefits that Settlement Class can claim from the non-reversionary common fund include the following:

a) <u>$50 Pro-Rata Cash Payment</u>. After the distribution of attorneys' fees, Class Counsel's litigation expenses, Administrative Fees, Service Awards, Out-of-Pocket Expense Claims, Lost-Time Claims, and Verified Fraud Claims (each of which is defined below in this Section), the Settlement Administrator will make *pro rata* settlement payments of the remaining Settlement Fund to each Class Member who submits a claim. This

may cause a *pro rata* increase or decrease the $50 cash payment. No documentation or attestation is required.

b) <u>Out-of-Pocket Expense Claims</u>.  Class Members can submit claim for reimbursement of documented out-of-pocket losses reasonably traceable to the Data Incident up to $5,000 per individual ("Out-of-Pocket-Expense Claims").  Out-of-Pocket-Expense Claims include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; the costs of freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after November 11, 2021 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. Documentation is required for this claim.

c) <u>Lost-Time Claims</u>.  Class Members can submit a Claim Form for reimbursement for time spent remedying issues related to the Data Incident for up to four (4) total hours at a rate of $25 per hour capped at $100 ("Lost-Time Claims"). No documentation need be submitted in connection with Lost-Time Claims, but Class Members must attest that the time claimed was actually spent as a result of the Data Incident.

d) <u>Verified Fraud Claims</u>: Class Members can submit a Claim Form for documented incident of fraud for $250 per incident capped at $ 5,000 per individual for verified and documented incidents of fraud ("Verified Fraud Claims"). Verified Fraud Claims will include, without limitation, any verified incident regardless of reimbursement. This

> may include fraudulent bank or credit card charges, tax filings, opening of bank and/or
>
> credit accounts, unemployment filings, etc. Class Members with Verified Fraud Claims
>
> must submit documentation and attestation supporting their claims.

Any residual funds after payment of all class benefits, Settlement Administration fees, attorneys' fees, costs, and Service Awards shall be used for a *pro rata* increase of the $50 pro rata cash payment claims with no maximum payment. Any funds that remain after the distribution and reissuance of all payments from the Settlement Fund, including for settlement checks that are not cashed by the deadline to do so, will be Remainder Funds that shall be distributed to a charitable organization approved of by the Parties and subject to Court approval.

### B.      The Notice and Claims Process

After evaluating three competitive bids, the Parties have agreed to use Kroll Settlement Administration, LLC ("Kroll") as the Notice Provider and Settlement Administrator in this case. S.A. ¶ 1.32. The cost of notice and claims administration is estimated to be approximately $216,500.

#### 1.      Notice

The current and agreed upon Notice Plan calls for direct and individual Notice, in the form of summary postcards, to be provided to Class Members via United States Postal Service first class mail. The Settlement Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, contact information for Class Counsel and Defendant's Counsel, and the Settlement Administrator will also make a toll-free telephone line for Class Members to call with Settlement-related inquiries,

and establish and maintain a post office box for mailed written notifications of exclusion or objections from the Settlement Class.

The details of the Notice Program are set out more fully in the Settlement Agreement, and the forms of notice (Short and Long) are attached thereto as Exhibits B and C.

### 2.    *Claims*

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object. S.A. ¶¶ 1.20, 1.21, 1.7. Class Members will have 90 days from the Notice Deadline to submit their Claim Form to the Settlement Administrator, either electronically or by mail, and 60 days to object or opt-out. *Id.* The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Class Members' ease in completing it. *See* S.A. Ex. A.

To submit a claim for the $50 pro rata cash payment or for Lost-Time Claims, Class Members need only confirm and attest to the best of their knowledge or belief that they are Class Members. For Out-of-Pocket Expenses, Class Members must submit documentation showing that they incurred unauthorized or fraudulent charges or Out-of-Pocket Expenses fairly traceable to the Data Incident, that those losses were not otherwise reimbursed, and attest that the claim is true and correct to the best of his or her knowledge or belief. The Settlement Administrator is given the authority to assess the validity of claims. S.A. ¶¶ 2.4, 2.41, 2.42.

### 3.    *Requests for Exclusion and Objections*

Any Class Members who wishes to exclude themselves from or object to the Settlement shall have until 60 days after the Notice Date to do so. S.A. ¶¶ 1.21. Each Settlement Class Member wishing to exclude themselves from the Settlement Class must individually sign and timely mail

a written Request for Exclusion to the address designated by the Settlement Administrator, and clearly manifest intent to opt-out.  S.A. ¶ 4.1. Any Settlement Class Member who files an opt out shall be excluded from the Settlement Class, and not obtain any benefit hereunder and not offer any release to the Released Parties. S.A. ¶ 4.2.

Class Members shall have until 60 days after the Notice Date to object to the Agreement. S.A. ¶ 1.20.  Class Members can make objections by mailing the objections to Counsel for both Parties or filing the objection with the court. Objections shall state: (i) the objector's full name and address; (ii) the case name and docket number, *Jones v. P2ES Holdings, LLC*, Case No. 1:23-cv-00408-GPG-MEH in the United States District Court for the District of Colorado; (iii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Approval Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.  S.A. ¶ 5.1.

### C.    Plaintiffs' Service Awards, Attorneys' Fees and Costs

The Settlement Agreement calls for a reasonable service award to each Class Representative in the amount of $5,000, subject to Court approval, to be paid solely from the Settlement Fund and subject to Court approval. S.A. ¶ 1.30.

Class Counsel may file a motion seeking reasonable attorneys' fees in an amount not to exceed 33.33 percent (or $416,666.67) of the Settlement Fund. S.A. ¶ 7.2. In addition, Class Counsel may seek their reasonable costs and expenses from the Settlement Fund (not to exceed $15,000).  The entirety of the Attorneys' Fees and Expenses Award shall be payable solely from the Settlement Fund.  Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards prior to prior to Class Members' deadline to exclude themselves from or object to the Settlement Agreement.

## IV.     LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. *See also Rutter & Wilbanks Corp*. v. Shell Oil Co., 314 F.3d 1180, 1187 (10th Cir. 2002) (approval of a proposed settlement is within the sound discretion of the Court)). The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.

Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and directs notice to be given to the class. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018). "The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing." *Rhodes*, 308 F.R.D. at 666 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (Kane, J.)). In the second stage, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms and grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *Rutter,* 314 F.3d at 1188.

"The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F.Supp.3d 1003, 1007 (D. Colo. May 19, 2014). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. at 314-315.

"The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness." *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage." *Id*.; *see also Lucas*, 234 F.R.D. at 693. Representative Plaintiffs here seek preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4ᵗʰ ed.). "Colorado public and judicial policies favor voluntary agreements to settle legal disputes." *See Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo.1992)(*en banc*); *Davis v. Flatiron Materials Co*., 182 Colo. 65, 511 P.2d 28, 32 (Colo.1973)(en banc).

There is a strong presumption in favor of finding Settlement Agreements fair, adequate and reasonable – especially when the settlement of a class action results from arm's length negotiations between experienced counsel after significant discovery has occurred. *Lucas*, 234 F.R.D. at  693. Compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties, "and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997); *Williams v. First Nat. Bank*, 216 U.S. 582 595, 30 S.Ct.

441, 54 L.Ed. 625 (1910). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

"The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citation omitted). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' motion and allow notice to be provided to the class.

## VI.   LEGAL DISCUSSION

### A.   The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiffs here seeks certification of a Class consisting of "All natural persons who were impacted in  the November 2021 Data Incident." The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria". MCL 4th, § 21.632.

Under Rule 23, a class action may be maintained where the movants demonstrate: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011), *citing* Rule 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified – on a *national* basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021); *In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040 (S.D. Tex. 2012). This case is no different.

*1.     The Settlement Class is so numerous that joinder is impracticable.*

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where

as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978). Here, the threshold required to establish numerosity is surpassed, as the proposed Settlement Class includes approximately 179,659 individuals whose PII was potentially impacted by the Data   Incident. The Settlement Class is sufficiently numerous to justify certification.

2.      *Questions of law and fact are common to the Settlement Class.*

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The threshold for meeting this prong is not high— the requirement is satisfied where the plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 347. Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse*." Soseeah v. Sentry Insurance*, 2016 WL 7435792 (D.N.M. 2016)*,* quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Defendant failed to adequately safeguard the records of Plaintiffs and other Class Members is a question common across the entire class. Defendant's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and

- Whether Defendant's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in the CAC, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

3.    *Plaintiffs' claims and defenses are typical of the Settlement Class.*

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 126 (D. Colo. 2016), quoting *Bass v. PJCOMN Acquisition Corp*., No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id*., quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiffs' and Class Members' claims all stem from the same event—the purported the attack on Defendant's computers and servers—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiffs' and Class Members' data. Thus, Plaintiffs' claims are typical of the Class Members' and the typicality requirement is satisfied.

    4.    *Plaintiffs and their counsel will provide fair and adequate representation for the Settlement Class.*

Representative plaintiffs must be able to provide fair and adequate representation for the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego*, 313 F.R.D. at 126 (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010). To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Class Members will all be eligible for the same or the same $5000 expense reimbursements, the same Lost-Time claim, and the same $50 payment, reduced or increased *pro rata* based on the claims rate and availability of funds.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Joint Dec. ¶¶ 17-34, Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

    5.    *Certification is also appropriate because common issues predominate over individualized ones, and class treatment is superior.*

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold.

First, "[i]n order to 'predominate,' the Court must find that questions of law or fact common to class members predominate over any questions affecting only individual members. *Pliego,* 313 F.R.D. at 126 (citing FED. R. CIV. P. 23(b)(3). In this case, key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).[1]

---

[1] *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

Second, the resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Incident. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

**B.      The Settlement Terms are Fair, Adequate, and Reasonable.**

On preliminary approval, and prior to approving notice be sent to the proposed Class, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the 10th Circuit, approval of a class action settlement is committed to the sound discretion of the Court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, this court should grant preliminary approval and allow notice to issue to the class.

### 1. *Whether the settlement was fairly and honestly negotiated.*

The negotiations in this matter occurred at arm's length. Joint Dec. at ¶ 3. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

In this case, the parties engaged in a mediation with well-regarded mediator Bruce Friedman. *Id.*, ¶ 9. After the arms-length negotiations, the mediation did not result in a settlement. However, the Parties continued to explore a potential resolution. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Friedman

supports the conclusion that the Settlement was achieved free of collusion. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011).

2.   *Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.*

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant asserts a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data security cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013).  Plaintiffs dispute the defenses Defendant asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

3.      *Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.*

The Settlement guarantees Class Members real relief and value for harms as well as protections from potential future fall-out from the Data Incident.

The settlement negotiated on behalf of the Class provides for a $1,250,000 Settlement Fund where Class Members can easily submit a claim for substantial relief from the Settlement Fund, as outlined above. Even if every single class member were to file a claim, the non-reversionary Settlement Fund provides for a per class member recovery of approximately $6.95 per class member. This compares quite favorably to terms approved by courts in other, similar data security cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.,* Case No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for only $2.3 million (or $0.76 per person)); *In re Herff Jones Data Breach Litigation*, No. 21-cv-1329 (S.D. Ind.) (data breach class action involving more than 1 million people that settled for only $4.35 million (or approximately $4.35 per person).

4.      *Whether the judgment of the parties and their counsel that the settlement is fair and reasonable.*

The judgment of the parties and their counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data security and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data security litigation, and reported settlements in other data security class actions. The monetary benefits offered to Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties

presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data incidents, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data security class actions that have been approved by other courts, including those cited above.

The proposed Settlement is a non-reversionary common fund that does not provide any preferential treatment of the named Plaintiffs or any segments of the Class. See Fed. R. Civ. P. 23(e)(2)(D). With this proposed Settlement, Class Members are able to recover damages for any injuries caused by the Data Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses allow Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Plaintiffs also intend to apply for service awards for the Class Representatives. These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). A service award to the Class Representatives is appropriate here given the efforts and participation of Plaintiffs in the litigation, and does not constitute preferential treatment. The Class Representatives were not promised a service award, nor did they condition their representation on the expectation of a service award. Joint Dec. at ¶ 35.

### C.    The Proposed Settlement Administrator will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. *See* S.A. Exs. B and C (Short and Long Notice). Here, the Settlement provides for direct and individual notice, to be sent via first class mail to each Settlement Class Member. Declaration of Scott Fenwick of Kroll Settlement Administration, LLC, attached hereto as Exhibit 3.

Not only has Defendant agreed to provide Class Members with individualized notice via direct mail through the proposed claims administrator, but all versions of the settlement notice will be available to Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 40. The Settlement Administrator will also make a post office box and toll-free telephone number available by which Class Members can seek answers to questions about the Settlement. *Id.*

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* S.A. at Exs. B and C.

The direct mail Notice proposed here is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court.

Also, the Settlement Administrator will prepare and send notice in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, et seq. ("CAFA"), to be served upon the appropriate State official in each State where Class Members reside and the appropriate federal official. Costs for preparation and issuance of the CAFA Notice will be paid by Defendant from the Settlement Fund.

## V.     CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Class Members significant relief in the form of monetary payments, lost-time and loss reimbursements. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: October 5, 2023          Respectfully submitted,

*/s/ David K. Lietz*

**David K. Lietz**
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
E-mail: dlietz@milberg.com

**Gary M. Klinger**
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
E-mail: gklinger@milberg.com

**Terence R. Coates**
**Justin C. Walker**
**Dylan J. Gould**
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Tel: 513.651-3700
E-mail: tcoates@msdlegal.com
         jwalker@msdlegal.com
         dgould@msdlegal.com

*Attorneys for Plaintiffs and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 5th day of October, 2023, I caused the foregoing document to be filed with the Clerk of this Court via the Court's CM/ECF system, which will cause a true and correct copy to be served electronically on all counsel of record.

*/s/ David K. Lietz*
David K. Lietz