**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| DIANE S. JONES, and | ) | |
| JOAN OGG, *on behalf of themselves* | ) | |
| *and all others similarly situated*, | ) | |
| | ) | Case No. 23-cv-00408-GPG-MEH |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Gordon P. Gallagher |
| P2ES HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iv

I.      INTRODUCTION ..................................................................................................1

II.     INCORPORATION BY REFERENCE ..................................................................2

III.    SUMMARY OF SETTLEMENT ...........................................................................2

        A.      Settlement Benefits ....................................................................................2

        B.      The Notice and Claims Process ..................................................................3

                1.      CAFA Notice....................................................................................4

                2.      Direct Mail Notice ...........................................................................4

                3.      Claims, Objections, and Requests for Exclusion ...........................5

        C.      Attorneys' Fees, Costs, and Service Awards..............................................5

IV.     ARGUMENT ..........................................................................................................6

        A.      Final Certification of the Settlement Class is Appropriate ......................6

        B.      Adequate Notice was Provided ..................................................................6

        C.      Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel.................9

        D.      The Settlement Should be Finally Recognized as Fair, Reasonable,
                and Adequate..............................................................................................9

                1.      The Settlement was Fairly and Honesty Negotiated.................................10

                2.      Serious Questions of Law and Fact Exist, Placing the Ultimate
                        Outcome of the Litigation in Doubt..........................................................11

                3.      The Value of an Immediate Recovery Outweighs the Mere Possibility
                        of Future Relief After Protracted and Expensive Litigation ....................12

                4.      The Judgment of the Parties and their Counsel that the Settlement
                        is Fair and Reasonable ..............................................................................13

                5.      There are No Additional Agreements Required to be Identified
                        Under Rule 23(e)(3) ..................................................................................14

        6.      The Reaction of the Settlement Class Members is Positive, and
                There is No Opposition to This Settlement.................................................14

V.     CONCLUSION..............................................................................................................15

CERTIFICATE OF SERVICE .................................................................................................16

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................ 6

*Billittri v. Securities America, Inc.*,
  Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........... 7

*Cochran v. The Kroger Co.*,
  No. 20-cv-3424, 2022 WL 2126696 (N.D. Cal. Mar. 24, 2022) .............................. 12

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
  807 F. App'x 752 (10th Cir. 2020),
  *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020).......................... 7

*Florence v. Jose Pepper's Rest., LLC*,
  No. 20-2339, 2021 WL 5042715 (D. Kan. Oct. 29, 2021)...................................... 10

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ........................... 11

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................... 12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013)................................................................................. 12

*Jones v. Nuclear Pharmacy, Inc.*,
  741 F.2d 322 (10th Cir. 1984) ...................................................................... 10, 15

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................ 6

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................ 6

*Reynolds v. Marymount Manhattan College*,
  No. 1:22-cv-06846, ECF 73 (S.D.N.Y. Oct. 20, 2023) ......................................... 13

*Stott v. Capital Financial Servs.*, ...................................................................................
  277 F.R.D. 316, (N.D. Tex. 2011) ......................................................................... 7

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. May 19, 2014)........................................................ 6

iv

*Voulgaris v. Array BioPharma Inc.*,
   No. 17-cv-02789, 2021 WL 6331178 (D. Colo. Dec. 3, 2021) ................................................10

## Statutes

28 U.S.C. § 1711 ...................................................................................................................... 8

28 U.S.C. § 1715(b) ................................................................................................................. 3

## Rules

Fed. R. Civ. P. 5(b)(2)(E) ....................................................................................................... 15

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Fed. R. Civ. P. 23(a) ................................................................................................................ 6

Fed. R. Civ. P. 23(a)(1)-(4) ..................................................................................................... 6

Fed. R. Civ. P. 23(b) ................................................................................................................ 6

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... 6

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 6, 7

Fed. R. Civ. P. 23(c)(3) ............................................................................................................ 7

Fed. R. Civ. P. 23(e) .......................................................................................................... 14, 15

Fed. R. Civ. P. 23(e)(1) ............................................................................................................ 6

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 9

Fed. R. Civ. P. 23(e)(3) ............................................................................................... 2, 9, 10, 14

Fed. R. Civ. P. 23(e)(2)(A)-(D) ............................................................................................... 9

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ....................................................................................... 8-9

Fed. R. Civ. P 23(g)(1)(B) ....................................................................................................... 8

## Other Authorities

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ...................4

*Manual for Complex Litig.* § 21.632 (4th ed. 2004) ........................................................6

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ....................................................11

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, 27 (3d ed. 2010)..........................................................................8

Plaintiffs Diane S. Jones and Joan Ogg, individually and on behalf of the Settlement Class they represent, hereby move this Court to grant final approval of this class action settlement.

## I.    **INTRODUCTION**

This case arises from a data incident (the "Data Incident") P2ES Holdings, LLC ("Defendant") experienced in November 2021 that allegedly compromised the personal and private identifying information ("PII") of approximately 179,659 current and former customers of Defendant's clients and customers, their dependents, and other affiliated individuals.

On October 5, 2023, Plaintiffs moved for preliminary approval of the proposed class action settlement and for certification of the Settlement Class in the above captioned action ECF 37 ("Prelim. Approval Mot."). The Court granted preliminary approval on October 12, 2023, finding that the terms of the settlement were "fair, reasonable, and adequate," and that the Class should be given notice. ECF 39 ("Prelim. Approval Order").

Plaintiffs now seek final approval of the settlement and certification of the Settlement Class. Following preliminary approval, the Claims Administrator, Kroll Settlement Administration LLC ("Kroll"), conducted a comprehensive Court-approved Notice Program with direct notice of the settlement delivered by U.S. First Class mail and email, and also published on a dedicated Settlement Website. Declaration of Scott Fenwick, attached hereto as **Exhibit 1**, ¶¶ 6, 9-10 ("Kroll Declaration" or "Kroll Decl.").

The settlement is fair, reasonable, and adequate, and represents an outstanding result for the Settlement Class. Through extensive negotiations, the Parties reached an agreement providing for significant monetary relief for the Settlement Class in the form of a $1,250,000 non-reversionary fund (the "Settlement Fund"). Joint Declaration of Plaintiffs' Counsel Supporting Unopposed Motion for Final Approval of Class Action Settlement, attached hereto as **Exhibit 2**

("Joint Decl.") ¶ 13. All 176,327 Settlement Class Members have had the opportunity to make a

claim for a $50 pro rata cash payment, reimbursement of out-of-pocket expenses up to $5,000, lost

time claims at $25 per hour up to four hours, and verified fraud claims of $250 per incident, up to

$5,000. Joint Decl. ¶¶ 14-17; Kroll Decl. ¶ 5 (noting there are 176,329 Settlement Class Members).

If approved, the settlement will resolve all claims arising from the Data Incident and will

provide Settlement Class Members with the particular relief this action was filed to obtain.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement,

Plaintiffs respectfully request that the Court enter an Order granting final approval of the settlement

and certify the Settlement Class.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case,

Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Action Settlement (ECF 37), filed on October 5, 2023, and the accompanying

Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. Plaintiffs

also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service

Awards (ECF 40), filed on January 11, 2023.

## III.    SUMMARY OF SETTLEMENT

### A.  Settlement Benefits

The settlement provides for a nationwide Settlement Class defined according to the Motion

for Preliminary Approval. The Settlement Class includes, "All natural persons who were impacted

in the November 2021 Data Incident."[1]

---

[1] The Class specifically excludes: (i) Defendant and its officers and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or

The Settlement provides for monetary relief. Upon final approval of the Settlement Agreement, a non-reversionary common fund in the amount of $1,250,000 will be distributed to Settlement Class Members. All Settlement Class Members have had the opportunity to submit a Claim Form from the Settlement Fund for certain Claimed Benefits.

All Settlement Class Members who submit a claim are eligible to receive a $50 pro-rata cash payment after the distribution of attorneys' fees, Class Counsel's litigation expenses, administrative fees, Service Awards, Out-of-Pocket Expense Claims, Lost-Time Claims, and Verified Fraud Claims.

Additionally, all Settlement Class Members had the opportunity to submit a claim for documented Out-of-Pocket Expenses up to $5,000 per individual, including reimbursement for Lost Time spent remedying issues related to the Data Incident up to four (4) hours at a rate of $25 per hour up to $100. No documentation was required for Lost-Time Claims, but Class Members must have attested that the time claimed was actually spent as a result of the Data Incident.

Lastly, Class Members can submit a Claim Form for documented incidents of fraud at $250 per incident up to $5,000 per individual for verified and documented incidents of fraud ("Verified Fraud Claims").

**B.    The Notice and Claims Process**

The Parties agreed to use Kroll as the Claims Administrator. Joint Decl. ¶ 9. The cost of notice and claims administration is estimated to be $221,955. Kroll Decl. ¶ 21. Kroll carried out notice in accordance with the Court's Preliminary Approval Order and due process.

---

abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. Settlement Agreement, ECF 37-1, ¶ 1.4.

1.    **CAFA Notice**

Kroll began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Kroll Decl. ¶ 4. At the direction of defense counsel, on October 13, 2023, Kroll sent the CAFA Notice, via First-Class Certified Mail, to (i) the Attorney General of all states and territories, as well as the Attorney General of the United States. *Id.* A copy of the CAFA Notice cover letter is attached hereto as Exhibit B to Kroll's Declaration.

2.    **Direct Mail Notice**

On November 27, 2023, Kroll commenced the Notice Program. Kroll Decl. ¶¶ 9-10**.** The Notice Program included providing notice to the Settlement Class via United States Postal Service First Class mail and by email. Kroll Decl. ¶¶ 5, 9-10.

Kroll established a dedicated Settlement Website, which it has maintained and updated throughout the claim period with the Short Form Notice, Long Form Notice, Claim Form, Settlement Agreement, contact information for Class Counsel and Defendant's Counsel, and a toll-free telephone number provided. Kroll Decl. ¶ 6. Kroll established and maintained a post office box for mailed opt-out requests or objections from the Settlement Class. Kroll Decl. ¶ 8.

The direct mail notice campaign was successful. Following all re-mailings, Kroll has reason to believe that direct notice likely reached 156,054 of the 170,110 Class Members to whom a Short Notice was mailed or emailed, which equates to a reach rate of the direct notice of approximately 91.74%. Kroll Decl. ¶ 13. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice

plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id.*

### 3.    Claims, Objections, and Requests for Exclusion

The claims process was structured to provide all Settlement Class Members adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether to opt-out or object. The Notice Program advised Settlement Class Members of their rights to object to or opt out of the settlement and directed Settlement Class Members to the Settlement Website for more information. Settlement Class Members were provided 90 days from the Notice Commencement Date to submit their Claim Form to the Claims Administrator, either online or by mail. Kroll Decl. ¶¶ 9, 14. Settlement Class Members were provided 60 days from the Notice Commencement Date to opt out or object. Kroll Decl. ¶¶ 9, 19. To date, no objections have been filed and the Claims Administrator has received only four (4) requests for exclusion. Kroll Decl. ¶ 20.

As of March 15, 2024, Kroll has received 4,135 Claim Forms filed through the mail and 1,160 Claim Forms filed electronically through the Settlement Website, for a total of 5,295 claims. Kroll Decl. ¶ 15. Kroll is still in the process of reviewing and validating the 5,295 Claim Forms submitted.

### C.    <u>Attorneys' Fees, Costs, and Service Awards</u>

Plaintiffs previously filed their Motion for Attorneys' Fees, Costs, and Service Awards to ensure that Settlement Class Members had ample opportunity to review the requested amounts

---

[2] Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

prior to deciding whether to object to or opt-out of the Settlement. Plaintiffs requested an award of attorneys' fees of $416,666.67 and out-of-pocket expenses up to $12,309.94. This fee request represents 33.33% of the total common fund recovery. ECF 40. Plaintiffs also request a service award for each of the Representative Plaintiffs in the amount of $5,000 each. ECF 40. Attorneys' fees, costs, expenses, and the service awards were negotiated only after all the substantive terms of the settlement were agreed upon by the Parties.

IV.    **ARGUMENT**

A.    **Final Certification of the Settlement Class is Appropriate**

This Court provisionally certified the Settlement Class for settlement purposes in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). *See* ECF 39; Fed. R. Civ. P. 23(a)(1)-(4); (b)(3); *Manual for Complex Litig.* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014). No developments have since arisen that would modify this conclusion. Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). As established by the facts and arguments stated herein and for the reasons articulated in Plaintiffs' Preliminary Approval Motion, the Settlement Class should now be finally certified for settlement purposes.

B.    **Adequate Notice was Provided**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including

6

individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail and email notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Servs.*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir. 2020), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020)

("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

The Notice provided for by the Settlement Agreement meets all the criteria described by Rule 23. *See* Settlement Agreement Exs. B and C (Short and Long Notice), ECF 37-1 at 47-61. The Settlement provided for direct and individual notice to be sent via First Class mail or email to each Settlement Class Member. *Id.* at 7, 11; Kroll Decl. ¶¶ 9-10. Additionally, all versions of the settlement notice have been made available to Settlement Class Members on the Settlement Website, along with all relevant filings. Kroll Decl. ¶ 6. The Settlement Administrator also set up a post office box and toll-free telephone number available by which Settlement Class Members could seek answers to questions about the Settlement. Kroll Decl. ¶¶ 7-8. The Notice process engaged in by the Settlement Administrator complies with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, et seq. ("CAFA"). Kroll Decl. ¶ 4.

As noted above, the notice program was successful, reaching 91.74% of the Settlement Class Members. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in Colorado, the Tenth Circuit and across the United States. 91.74% is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010). Kroll and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23, and satisfies due process requirements. The Notice Plan provided the best notice practicable, and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

### C.  **Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed herein, and as articulated in the Joint Declaration, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Joint Decl. ¶ 2. The proposed Settlement Class Counsel have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the settlement of this matter to the benefit of the Settlement Class. Accordingly, Plaintiffs request that the Court finally appoint Terence R. Coates, Justin C. Walker, Dylan J. Gould, Gary M. Klinger, and David K. Lietz as Settlement Class Counsel.

### D.  **The Settlement Should be Finally Recognized as Fair, Reasonable, and Adequate**

For a settlement to receive final approval under Rule 23(e)(2), the court must consider whether the settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is adequate …; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In making such a determination, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including

timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

Courts in the Tenth Circuit have sound discretion whether to approval a class action settlement. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

Here, because the Settlement is fair, reasonable, and adequate under both Rule 23(e) and the *Jones* factors, this court should grant preliminary approval.

### 1. The Settlement was Fairly and Honesty Negotiated

The negotiations in this matter occurred at arm's length. Joint Decl. ¶¶ 3, 7. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Voulgaris v. Array BioPharma Inc.*, No. 17-cv-02789, 2021 WL 6331178, at *9 (D. Colo. Dec. 3, 2021) (noting that "this Court has held that counsels' judgment as to the fairness of the agreement is entitled to considerable weight.") (Internal citations and quotations omitted); *Florence v. Jose Pepper's Rest., LLC*, No. 20-2339, 2021 WL 5042715, at *5 (D. Kan. Oct. 29, 2021) (approving the class action settlement "the parties are represented by qualified and experienced counsel who believe the settlement is fair, reasonable and adequate."). This reinforces the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e).

Here, the Parties engaged in a mediation session with Bruce Friedman. Joint Decl. ¶ 3. Although this process did not result in a settlement, the Parties continued to explore resolution, and came to a settlement not long thereafter. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011).

**2.  Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt**

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Defendant's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and legal claims Plaintiffs pled in their Complaint. However, Defendant denies all claims and contentions alleged in the Complaint, and Defendant denies all charges of wrongdoing or liability. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. The field of data breach litigation is evolving; there is no guarantee of the ultimate result. Here, the value achieved through the Settlement Agreement here is guaranteed, where changes of prevailing on the merits are not certain. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases … are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also recognize that Defendant would assert a number of potentially case-dispositive defenses. Joint Decl. ¶¶ 21, 33. Should litigation continue, it is likely Plaintiffs would have to immediately survive a motion to

dismiss in order to proceed with litigation. Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this generally face substantial hurdles, even to survive the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Moreover, because of the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Settlement Class Members can have a chance at relief.

3. **The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation**

The settlement provides for substantial relief in light of the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. Joint Decl. ¶¶ 29-31. The Settlement negotiated on behalf of the Class provides for a $1,250,000 Settlement Fund where Settlement Class Members can easily submit a claim for substantial relief from the Settlement Fund. Even if every single class member were to file a claim, the non-reversionary Settlement Fund provides for a per-class member recovery of approximately $7.09 per class member. This

compares favorably to terms approved by courts in other, similar data security cases. *See, e.g.,*
*Cochran v. The Kroger Co.*, No. 20-cv-3424, 2022 WL 2126696 (N.D. Cal. Mar. 24, 2022)
(granting final approval of a data breach class action settlement involving roughly 3.82 million
class members and a $5 million settlement fund (or $1.31 per class member)); *Order Granting*
*Final Approval of Class Action Settlement*, *Reynolds v. Marymount Manhattan College*, No. 1:22-
cv-06846, ECF 73 (S.D.N.Y. Oct. 20, 2023) (in data breach class action involving 191,581 class
members and a $1.3 million settlement fund (approximately $6.78 per class member)); *see also*
Joint Decl. ¶ 19.

### 4. The Judgment of the Parties and their Counsel that the Settlement is Fair and Reasonable

The judgment of the parties and their counsel also supports a finding that the settlement is
fair and reasonable. Here, the Parties entered into the Settlement only after both sides were fully
apprised on the facts, risks, and obstacles involved with protracted litigation. *See* Joint Decl. ¶¶
28, 32-33. From the beginning of their investigation, Settlement Class Counsel conducted
extensive research regarding Plaintiffs' claims, Defendant, and the Data Incident. *Id.* at ¶ 28. In
negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published
reports documenting data security and identity theft costs generally, alleged actual costs incurred
by Settlement Class Members (as relayed in conversations with Plaintiffs' Counsel), their own
experience in other data security litigation, and reported settlements in other data security class
actions. The monetary benefits offered to Settlement Class Members are more than fair and
reasonable in light of reported average out-of-pocket expenses due to a data incident. Additionally,
adequacy of representation requirement is satisfied as to Representative Plaintiffs because
Plaintiffs' interests are coextensive with—and not antagonistic to—the interests of the Settlement
Class. Plaintiffs' claims are aligned with that of the other Settlement Class Members. They thus

13

have every reason to vigorously pursue the claims of the Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process.

The benefits available here compare favorably to what Settlement Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data incidents, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Joint Decl. ¶¶ 31-32**.** Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data security class actions that have been approved by other courts, including those cited above. Joint Decl. ¶ 19.

### 5. There are No Additional Agreements Required to be Identified Under Rule 23(e)(3)

There are no additional agreements required to be identified under Rule 23(e)(3). Joint Decl ¶ 35. Because no such additional agreements exist, this factor does not weigh in favor of or against final approval.

### 6. The Reaction of the Settlement Class Members is Positive, and There is No Opposition to This Settlement.

While not a Rule 23(e) or stand-alone *Jones* factor, the reactions of the Settlement Class Members and the amount of opposition are important factors for the Court's consideration of final approval too.  Here, the reaction of the Class is positive, with minimal opt-outs (4), no objections by Settlement Class Members, and almost 5,000 claims. Also, there is no opposition to the overall Settlement, the attorneys' fees and expenses requested, or the service awards. Faced with no opposition, this Settlement should be finally approved.

V.    **CONCLUSION**

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant cash relief. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of the Rule 23(e) and *Jones* factors weighs in favor of Final Approval. For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the settlement and certify the Settlement Class.

Dated this March 18, 2024                    Respectfully submitted,

                                            *s/ Terence R. Coates*
                                            **Terence R. Coates**
                                            **Justin C. Walker**
                                            **Dylan J. Gould**
                                            MARKOVITS, STOCK & DEMARCO, LLC
                                            119 E. Court Street, Suite 530
                                            Cincinnati, OH 45202
                                            Phone: (513) 651-3700
                                            E-mail: tcoates@msdlegal.com
                                                     jwalker@msdlegal.com
                                                     dgould@msdlegal.com

                                            **David K. Lietz**
                                            MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN PLLC
                                            5335 Wisconsin Avenue NW, Suite 440
                                            Washington, D.C. 20015-2052
                                            E-mail: dlietz@milberg.com

                                            **Gary M. Klinger**
                                            MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN PLLC
                                            227 W. Monroe Street, Suite 2100
                                            Chicago, IL 60606
                                            Phone: (866) 252-0878
                                            E-mail: gklinger@milberg.com

                                            *Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2024, a copy of the foregoing was served upon counsel of

record for all parties by being filed with the Court's electronic-filing system, in accordance with Fed.

R. Civ. P. 5(b)(2)(E).

*s/ Terence R. Coates*
**Terence R. Coates**

16